This is a suit involving the status of several liens held by the State of Louisiana for taxes. The plaintiff, Mrs. Ruby A. Price, foreclosed a lien, which she held on certain property described in her petition, resulting from the recordation of a judgment in her favor against her debtor for $2,800. The property was sold to Miss Marie Louise Baker for $160, which sum is now in the hands of the Civil Sheriff awaiting distribution. A certificate was obtained from the Mortgage Office which disclosed a number of other liens, among them three in favor of the State of Louisiana aggregating considerably more than the price obtained for the property. A rule was taken by the purchaser to refer the liens to the proceeds and judgment to that effect was rendered on June 15, 1945. This is, therefore, a contest between lienholders for priority in the distribution of the small sum in the hands of the Sheriff, but in its more important aspect an effort to solve the legal question involved.
The judgments in favor of the State of Louisiana which were recorded on. June 7, 1940, January 24, 1941, and May 26, 1942, were for the sums of $30, $880.08 and $908 respectively.
The plaintiff, Mrs. Ruby A. Price, opposing the claim of the State, filed a plea of prescription of three years under Article XIX, Section 19, of the Constitution of 1921, reading in part as follows: "No mortgage or privilege on immovable property, or debt for which preference may be granted by law, shall affect third persons unless recorded or registered in the parish where the property is situated, in the manner and within the time prescribed by law, except privileges for expenses of last illness, privileges arising upon the death of the owner of the property affected, and privileges for taxes, State, parish and municipal; provided such tax liens, mortgages andprivileges shall lapse in three years from the 31st day ofDecember in the year in which the taxes are levied, and whethernow or hereafter recorded." (Italics ours.)
The plea of prescription was maintained, Mrs. Price's lien was given priority over the liens in favor of the State of Louisiana, and the Civil Sheriff directed to distribute the fund in his possession accordingly. The State of Louisiana has appealed.
[1] The State takes the position that the prescription established in Article XIX of the Constitution has no application to its judgments, which were admittedly obtained prior to the lapse of three years from the 31st of December of the year in which the taxes were due. The prescription, it is contended, applies only to liens upon which suit has not been filed or judgments obtained prior to the lapse of three years.
Our attention is called to Section 16 of Article XIX of the Constitution reading as follows:
"Civil matters — Prescription not to run against State.
"Prescription shall not run against the State in any civil matter, unless otherwise provided in this Constitution or expressly by law."
Also to State v. New Orleans Debenture Redemption Co.,112 La. 1, 36 So. 205; Bright v. New Orleans R. Co., 114 La. 679, 38 So. 494; Cordill v. Quaker Realty *Page 452 
Co., 130 La. 933, 58 So. 819; Quaker Realty Co. v. Maierwatt Realty Co., 134 La. 1030, 64 So. 897.
In Thibodaux v. People's Sugar Co., Inc., et al.,173 La. 1002, 139 So. 325, 327, it was said:
"It has been the accepted practice in this state to convert privileges and liens into judgments, and then to treat the judgments as valid and enforceable for ten years after rendition, notwithstanding the actual lapse of time sufficient to prescribe against the original lien or privilege, if it had not been reduced to judgment.
"Neither the framers of the present Constitution, nor the lawmakers of this state, have seen fit to depart from this accepted practice, and we see no good reason for doing so."
The plea of prescription is not well founded.
[2] Counsel for Mrs. Ruby Price in the alternative contend that Act No. 133 of 1942 amending Act No. 11 of 1940, which, in turn, amended Section 13 of Act 97 of 1936, is applicable here, and, therefore, the State's liens, which were recorded after plaintiff's lien, are subordinate thereto. This act, the purpose of which was to establish a system of unemployment compensation, the character of the tax involved here, declares that the State shall have a first lien and privilege for the payment of the tax, when recorded in the Mortgage Office of any Parish "on all of the real and personal property of the employer from the date of such filing only, and shall not affect liens, privileges, chattel mortgages, or mortgages already affecting or burdening such property at the date of such filing." This provision was not in the original Act of 1936 or in the amending Act of 1940.
Counsel for the State maintain that the provision contained in the Act of 1942 is not intended to have retroactive effect.
The argument of plaintiff's counsel is that the provision in the Act of 1942 applies to all liens recorded prior to its enactment against the property of a tax debtor and that this legislation was adopted because of the holding of the Supreme Court in Hibernia Mortgage Co. v. Greco, 191 La. 658,186 So. 60 and State v. J. Bodenger Realty Co., 195 La. 1014,197 So. 741. The Greco case, in construing Act No. 8 of 1932, which conferred a first lien and privilege in favor of the State in connection with a franchise tax, held that the Act had retrospective effect so as to give the State priority over preexisting liens. In a Per Curiam refusing an application for a rehearing, the question of whether liens resulting from judgments previously obtained by proceedings in rem would be affected was left open, but in the Bodenger case subsequently decided this question was determined in the affirmative. The Greco case was decided in January, 1939, and the Bodenger case in July, 1940. The contention is that the Act of 1942 was passed to overcome the effect of the holding in these two cases.
In State v. Alden Mills, 202 La. 416, 12 So.2d 204, 207, it was said:
"But, of all of the rules of statutory construction, the one which is most appropriate to this case is the so-called universal rule, stated in article 18 of the Civil Code, thus:
" 'The universal and most effectual way of discovering the true meaning of a law, when its expressions are dubious, is by considering the reason and spirit of it, or the cause which induced the Legislature to enact it.' "
We recognize the rule of construction invoked and its application is frequently of service in determining the intent of legislation not otherwise clear, but doubt its usefulness here. The cases referred to as inspiring the legislation may have had some influence but it will be observed that in both instances franchise and not unemployment taxes were involved and no change has been made in the law with respect to franchise taxes as was done with unemployment taxes. Witness Act No. 163 of 1942, passed two years after the last of the two decisions referred to. Moreover, it would have been very easy for the legislature to have used some phraseology indicating its intent to affect existing tax liens and thus proclaim its purpose to give the act retrospective as well as prospective effect.
Article 8 of the Revised Civil Code declares that laws are presumed to have prospective effect. It reads: "A law can prescribe only for the future; it can have no retrospective operation, nor can it impair the obligation of contracts."
In City of New Orleans v. Vergnote, 33 La. Ann. 35, 38, we read: — *Page 453 
"This article merely dictates an universal rule of construction, recognized in every known system of jurisprudence. Thus a distinguished law writer, treating of this subject, has said:
" 'One of the cardinal rules by which courts are governed in interpreting statutes is, they must be construed as prospective in every instance, except where the legislative intent that they shall act retrospectively is expressed in clear and unambiguous terms, or such intent is necessarily implied.' 'Every reasonable doubt as to the intention of the lawmaker is resolved against rather than in favor of the retroactive operation of the statute.'
* * * * * *
"In the case of [City of] Oakland v. Whipple, 44 Cal. 303, it was held:
" 'Where taxes are levied under a law which is repealed by a subsequent act, unless it appears clearly that the legislature intended the appeal to work retrospectively, it will be assumed that it intended the taxes to be collected according to laws inforce when they were levied.'"
Our conclusion is that Act 133 of 1942 does not affect tax liens which have been recorded and reduced to judgment prior to its enactment.
For the reasons assigned the judgment appealed from is annulled, avoided and reversed and it is now ordered that the judgment in favor of the State of Louisiana v. Robert L. Ducros for the sum of $880.08, interest, etc., recorded on May 20, 1942, in MOB 1601, Folio 324; Lien and privilege in favor of the State of Louisiana vs. Robert L. Ducros for the sum of $908, interest, etc., as per affidavit before R.P. Greene, Notary Public on January 18, 1941, recorded on January 24, 1941, in MOB 1618, Folio 7; and Judgment in favor of the State of Louisiana v. Robert L. Ducros for the sum of $30, interest, etc., dated April 11, 1940, and recorded on June 7, 1940, in MOB 1550, Folio 586, be and the same are hereby recognized as first in rank and as priming the inscription of judgment of Mrs. Ruby A. Price, which inscription is recorded in MOB 1507, Folio 301. It is further ordered that the Civil Sheriff of the Parish of Orleans be and he is hereby ordered to pay the entire amount of the purchase price of $160 in his hands, to the State of Louisiana. Costs of Court to be borne by plaintiff and appellee.
Reversed.